IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br><br>MICHAEL JOHN NIKOLS,<br><br>Defendant. | FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW<br>FOLLOWING DEFENDANT'S<br>DETENTION HEARING<br><br><br><br>Case No. 2:04-CR-00786 PGC |

This matter is before the court on the issue of detaining the defendant, Mr. Nikols, before trial. Because evidence has recently come before the court demonstrating that Mr. Nikols poses both a risk of flight before trial and a danger to the community, he will be detained.

**PROCEDURAL BACKGROUND**

On November 18, 2004, Mr. Nikols and three co-defendants were indicted on serious narcotics trafficking charges, including conspiracy to distribute more than 500 grams of cocaine and possessing seven different firearms in furtherance of that conspiracy. On December 1, 2004, they appeared before the court for an arraignment. The court asked whether a detention hearing was appropriate, and the government requested a detention hearing. The court set a detention hearing for December 13, 2004, and released the defendants pending that hearing.

On December 13, 2004, Mr. Nikols and three co-defendants appeared for a detention hearing. The government did not request detention and the court ordered that Mr. Nikols and the co-defendants remain released under certain conditions.

Following release, the court dealt with a number of defendants' pre-trial motions. The court rejected most of the defendants' motions, but it granted Mr. Nikols's motion to suppress a detailed confession that he had made in which he described how he organized and ran a multi-kilogram cocaine ring for nearly a decade.

After the court's rulings, the three co-defendants pled guilty to narcotics trafficking charges. It also appeared that the government and Mr. Nikols would reach an agreement. To facilitate such an agreement, the court extended the plea deadline in this case from September 16, 2005, to September 27, 2005, indicating that this would be a "firm" plea deadline. On the morning of September 27, 2005, the parties faxed to the court a proposed plea agreement. The court already had a hearing scheduled for September 27 — the firm plea cut-off — to accept that plea.

Later that day, however, defense counsel requested a two-day extension of the cut-off. Defense counsel explained that Mr. Nikols's father was overseas in Greece and that the plea agreement contemplated the transfer of $200,000 from Mr. Nikols's father to Mr. Nikols, to be paid to the government in lieu of forfeiture of certain properties. Because such an agreement would require the father's approval, counsel requested a two-day continuance to consult with the father. The court granted the continuance.

At a hearing two days later, the defendant indicated that he was not willing to enter a guilty plea. After arranging for briefing regarding certain pre-trial issues, the court on its own

motion raised the issue of Mr. Nikols's continued release. The court explained that it was concerned that Mr. Nikols had access to considerable funds and was now faced — for the first time — with the certainty of a trial. While not moving for detention, the government informed the court that it had recently discovered a $400,000 lien placed on one of Mr. Nikols's properties. The court ordered Mr. Nikols detained and scheduled a detention hearing for October 4, 2005. At Mr. Nikols's request, that hearing was rescheduled for October 6, 2005.

On September 30, 2005 — the day after Mr. Nikols was detained — the government and defense counsel jointly called the court and proposed that Mr. Nikols be released on various conditions, including the posting of $300,000 in property or cash by his father. The court deferred consideration of this proposal to the detention hearing. The court held a detention hearing on October 6, 2005.

## DISCUSSION

### I. The Court Can Reopen the Issue of Detention on Its Own Motion.

Mr. Nikols first argues that the court is without power to reopen the issue of Mr. Nikols's detention. This argument is without merit.

Under 18 U.S.C. § 3142(f)(2), the court may hold a detention hearing, even on its own motion, in a case that involves the serious risk that the defendant may flee. "The hearing shall be held immediately upon the person's first appearance before the" court, but the "hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known . . . at the time of the hearing and that has a material bearing on the issue."[1]

---

[1] 18 U.S.C. § 3142(f)(2).

In this case, information now exists that was not known at the time of the original detention hearing and that is material to Mr. Nikols's detention. First, the court has been made aware that the defendant has access to significant funds, at least $200,000 to $300,000 via his father. Second, it is now clear that Mr. Nikols has significant family contacts overseas. As recently as last week, Mr. Nikols's father was in Greece attending to family business. Third, three co-defendants in this case — Ann Atwood, Patty Tsouris, and Richard Madsen — have all recently pleaded guilty to narcotics trafficking offenses involving the defendant. For example, Mr. Madsen pleaded guilty before this court on June 1, 2005, in a hearing in which he admitted that he purchased several kilos of cocaine at Mr. Nikols's direction. Mr. Madsen confessed:

> During a period beginning at an unknown time but at least by March 1, 2002 through a date on or about October 31, 2002, in the Central Division of Utah, I did conspire or agree together with Michael John Nikols, Jose Reynaldo Flores, Anne E. Atwood, Patty Tsouras, and/or with other persons known and unknown to distribute cocaine.
> More specifically, I admit that in June of 2002 I agreed with Michael John Nikols to travel to El Paso, Texas on his behalf, where I met with Jose Reynaldo Flores, for the purpose of obtaining kilogram quantities of cocaine, and shipping it back to Utah using Federal Express so that it could be re-sold.
> I acknowledge that the amount of cocaine that I conspired to distribute during this time period, and for which I admit trafficking, was 4.5 [k]ilograms of cocaine. This amount takes into account 1 [k]ilogram of cocaine found in my possession in Texas, as well as another kilogram I previously shipped to Utah, and discussions I had with Michael John Nikols over the phone that were recorded in which I agreed to ship two additional kilograms of cocaine, had I not been arrested in Texas. . . .[2]

Fourth, the court has now heard evidence about Mr. Nikols's detailed confession to trafficking approximately 24 kilos of cocaine each year over a ten-year period. Fifth, for the first time, the defendant now faces a firm trial date without the possibility of intervening events such as a plea.

---

[2]Statement by Def. in Advance of Plea of Guilty [Docket No. 61], at 4, *United States v. Madsen*, Case No. 2:04-CR-00786-PGC-2 (D. Utah June 1, 2005).

Perhaps recognizing the significant new evidence against him, Mr. Nikols resorts to proceduralism in his attempt to avoid detention. He contends that no detention hearing was ever held in this case and, therefore, that the court is without power to "reopen" the hearing. This argument is belied by the court's docket. The docket reflects that on December 13, 2004, the court held a "detention hearing." The docket entry reads:

> Detention hearing as to Michael John Nikols, Richard E. Madsen, Ann E. Atwood, Patty C. Tsouras held: Defendants present with counsel and appearing on release. The G[overnment] submits on reports as to all defendants. The Court rules as to all defendants that they may remain released with specific conditions. Orders executed and filed in open court. Court Adjourned. A[ttorney] for G[overnment]: Chad Platt, AUSA, A[ttorney] for D[efendant]: Goodall/Athay/Brass, Retained (all d[efendants]). Judge Brooke C. Wells[.][3]

The hearing was held twelve days after the defendants' arraignment, within the normal time frame for detention hearings. It appears that Mr. Nikols would have the court view this hearing as one setting conditions of release. But the initial question in the hearing was whether such conditions would be set at all — that is, whether Mr. Nikols should be detained. The fact that he was released does not alter the fact that the hearing actually was a detention hearing.

## II.   The Court Can Consider Mr. Nikols's Access to Significant Funds.

Mr. Nikols next contends that the court is without power to consider the fact that he has access through his family to hundreds of thousands of dollars. Mr. Nikols contends that this evidence comes from a proposed plea agreement, which, under Rule 410 of the Federal Rules of Evidence, the court cannot properly consider.

Mr. Nikols is absolutely correct that "proceedings during the plea bargaining are

---

[3]Docket No. 11, *United States v. Nikols*, Case No. 2:04-CR-00786-PGC-1 (D. Utah Dec. 13, 2004).

generally recognized as privileged and inadmissible."[4] At issue here, however, is not the admissibility of Mr. Nikols's statements to the government during the plea bargaining process. Rather, Mr. Nikols made statements through counsel *directly to the court*. Mr. Nikols initially informed the court that he needed two days in which to obtain his father's approval for a transfer of $200,000. Mr. Nikols later told the court that his father could post $300,000 in bond. Rule 410 is simply inapplicable to these representations made directly to the court for Mr. Nikols's benefit. Moreover, even if Rule 410 covers the statements at issue, "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."[5]

### III. The Court Can Consider a Confession Obtained in Violation of *Miranda* at a Detention Hearing.

Mr. Nikols next argues that the court cannot consider his detailed confession because it was obtained in violation of *Miranda*. At an earlier hearing, the court found that the government had not obtained a valid waiver of *Miranda* rights from Mr. Nikols before questioning him. The court therefore suppressed the confession, barring the government from using it at trial. The court, however, also found that the confession was voluntary and therefore could be used for impeachment and other appropriate purposes. Mr. Nikols now argues that the court cannot consider his confession in determining whether to detain him.

The issue of whether a statement suppressed on *Miranda* grounds can be used at a detention hearing appears to be an issue of first impression in the federal courts. Mr. Nikols

---

[4]*United States v. Smith*, 525 F.2d 1017, 1020-21 (10th Cir. 1975).

[5]18 U.S.C. § 3142(f)(2).

would have the court decide this issue in the same fashion as various cases in which a court considered evidence that was allegedly obtained in violation of the Fourth Amendment when making its detention determination under 18 U.S.C. § 3142.[6] These cases may be somewhat instructive, but they are all clearly distinguishable, for they set forth how Fourth Amendment violations — rather than *Miranda* violations — affect detention considerations. And the cases Mr. Nikols cites discuss the challenged evidence in the context of "weight of the evidence" under § 3142(g) — just one of four statutory factors the court must consider in a detention hearing.

These cases state that when a defendant has merely *challenged* evidence as procured in violation of the Fourth Amendment, a court may consider it when deciding whether to detain the defendant — after all, courts almost never hold a suppression hearing early in a case when they are deciding detention issues. But these cases also seem to suggest that if a court later determines that the challenged evidence was inadmissible, then a court could not consider it for detention purposes.

This seems to be a correct point of law when considering the "strength of the evidence" prong under § 3142(g), because suppressed evidence will not be available for the government's case-in-chief. But, as more fully discussed below, the "strength of the evidence" is only one of four factors that the court must consider when deciding whether to detain a defendant. And these four factors guide the court in evaluating Congress' two overarching concerns related to pre-trial detention as stated 18 U.S.C. § 3142(e): whether the defendant is a flight risk and whether the defendant is a danger to the community.

---

[6]*See United States v. Apker*, 964 F.2d 742, 744 (8th Cir. 1992); *United States v. Acosta*, 769 F. Supp. 184, 186-87 (E.D. Pa. 1991); *see also United States v. Hightower*, 203 F.3d 836 (10th Cir. 2000) (per curiam) (unpublished op.).

The reasoning that applies to one of § 3142(g)'s four factors — "weight of the evidence" — does not seem to be a correct point of law when considering that section's three other factors. More importantly, whether evidence is admissible at trial seems only tangentially related to a detention hearing's main focus: whether the defendant is dangerous to the community and whether he poses a flight risk. Indeed, § 3142(f) itself is not concerned with technical admissibility questions, for it provides that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."

In light of § 3142(e)'s command to assess the defendant's danger to the community and risk of flight, the question devolves to whether *Miranda* itself requires suppression of a statement at a detention hearing. The court finds that it does not.

United States Supreme Court decisions following *Miranda* demonstrate that its protections extend only to the government's case-in-chief. For example, in *Harris v. New York*,[7] the Court held that even in a *trial*, the government may use a defendant's statement against him for impeachment purposes though it was obtained in violation of *Miranda*.[8] And just last year, the Court held in *United States v. Patane*[9] that the government may also use — *at trial* — nontestimonial physical evidence derived from a statement obtained from an innocent violation of *Miranda*.[10]

---

[7] 401 U.S. 222 (1971).

[8] *Id.* at 226.

[9] 124 S. Ct. 2620 (2004).

[10] *Id.* at 2624.

The Court has explained in these cases that "just as the Self-Incrimination Clause primarily focuses on the *criminal trial*, so too does the *Miranda* rule."[11] "[T]he nature of the right protected by the Self-Incrimination Clause, which the *Miranda* rule, in turn, protects[,] . . . . is a fundamental *trial* right."[12] As such, "[p]otential violations occur, *if at all*, only upon the admission of unwarned statements into evidence at trial. And, at that point, '[t]he exclusion of unwarned statements . . . is a complete and sufficient remedy' for any perceived *Miranda* violation."[13]

Given the Supreme Court's utmost clarity, it is not surprising that this court cannot find any prior case that supports Mr. Nikols's position. The *Miranda* rule only applies to trials; more specifically, it applies to the government's case-in-chief. A violation only occurs when evidence is introduced at trial, and any such violation is "complete[ly] and sufficient[ly]" remedied by excluding the statement at trial.

Here, the court is making a detention determination. This is not "trial." Based on clear United States Supreme Court precedent, *Miranda* does not apply to non-trial proceedings. And these detention proceedings concern a very serious subject — danger to the community. Thus, absent a clear directive from the Supreme Court to the contrary, it is not appropriate to ignore a defendant's confession when considering detention issues. The court will therefore consider Mr. Nikols's confession in determining whether he poses a danger to the community or whether he

---

[11]*Id.* at 2626 (emphasis added).

[12]*Id.* at 2628 (internal quotation marks omitted).

[13]*Id.* at 2629 (quoting *Chavez v. Martinez*, 538 U.S. 760, 790 (2003)) (emphasis added) (alteration in original).

will be a flight risk if not detained before trial.

### IV. Mr. Nikols Should Be Detained as a Danger to the Community and a Risk of Flight.

Mr. Nikols next argues that, on the merits of the issue, there is insufficient evidence to detain him. To the contrary, the court finds that clear and convincing evidence establishes that he poses both a serious risk of flight and a serious danger to the community.

As noted above, 18 U.S.C. § 3142(g) directs the court to consider these four factors when deciding whether a defendant should be detained before trial:

> (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.[14]

The court will examine each of these factors in turn.

#### A. Nature and Seriousness of the Offense Charged

Mr. Nikols is charged with a grave offense involving the possession and distribution of narcotics, as well as the possession of weapons during drug distribution. Such a charge is quite serious. Under the Sentencing Guidlines, Mr. Nikols faces the possibility of a sentence of more than twenty-seven years in prison on these charges. Indeed, if the court were to impose a sentence based on the quantity of drugs indicated in Mr. Nikols's confession — twenty-four kilos of cocaine each year for many years — Mr. Nikols would likely spend the rest of his life in prison. And distributing cocaine is a very serious offense that poses a significant danger to the

---

[14] *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing 18 U.S.C. § 3142(g)).

community.[15] Based on these facts, the court finds that the nature and seriousness of the offense charged weighs heavily in favor of detention.

### B. The Weight of the Evidence

The evidence against Mr. Nikols appears to be overwhelming. The government provided a detailed proffer of its evidence at the detention hearing. Here it is necessary to recount only a few highlights. During the execution of a search warrant, police found cocaine at Mr. Nikols's home and firearms at both his home and his restaurant. The government also has a number of wiretap recordings of Mr. Nikols orchestrating drug transactions. Additionally, the three persons charged along with Mr. Nikols have all pleaded guilty to charges relating to this case. Richard Madsen has pleaded guilty before the court to charges of conspiracy to distribute narcotics, and has acknowledged to distributing 4.5 kilograms at the request of Mr. Nikols. Ann Atwood and Patty Tsouras have both recently pleaded guilty to charges relating to this case in state court. Apparently, these co-defendants are now prepared to testify against Mr. Nikols. Although the court will not impute the guilt of one accomplice to another awaiting trial, the court will take these pleas, including the admission that crimes were committed at Mr. Nikols's behest, into account in weighing the evidence against him.

Of course, "the weight of the evidence is the *least important* of [the detention] factors."[16] And the court will *not* consider Mr. Nikols's suppressed confession of being a drug dealer as going to the weight of the evidence. It will only consider the confession for the determination of

---

[15] *United States v. Cox*, 635 F. Supp. 1047, 1056 (D. Kan. 1986) (citing *United States v. Williams*, 753 F.2d 329, 335 (4th Cir. 1985), and *United States v. Daniels*, 622 F. Supp. 178, 179 (N.D. Ill. 1985)).

[16] *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986) (emphasis added).

the nature and seriousness of the charges and whether he is a danger to the community. But looking at the admissible evidence, the court finds that there is substantial evidence showing that Mr. Nikols committed the charged crimes.

### C. Mr. Nikols's Character, History, Family Ties, and Other Factors

The defendant's history favors release. The defendant has complied with all of his release conditions up to this point and argues that he has always been a mainstay in the community. His family ties are supported by evidence offered by the defense. Mr. Nikols has shown that he has stayed in the community and developed deep ties. In addition, he has no prior criminal convictions.

### D. Nature and Seriousness of the Danger to the Community

"[T]he very nature of drug offenses themselves constitutes a danger to the community and can in some instances warrant pretrial detention absent the elements of violence."[17] Due to the dangerousness of the alleged drug dealing by Mr. Nikols, and given the multiple kilos of cocaine he is charged with distributing, the court finds that Mr. Nikols will be a danger to the community if released. Thus, this factor weighs quite heavily in favor of detaining Mr. Nikols prior to his trial.

### E. Risk of Flight

With access to a large amount of cash funds, including up to $300,000 in cash from his father, and facing essentially what would be a life sentence in prison, Mr. Nikols appears to be a prime flight risk. "Taking possession of [Nikols's] passport has little flight deterrence

---

[17] *Cox*, 635 F. Supp. at 1056 (citing *Williams*, 753 F.2d at 335 and *Daniels*, 622 F. Supp. at 179).

considering the ease of travel to Mexico and Canada."[18] Mr. Nikols faces a sentence of more than 25 years if convicted, reducing any significance of a surety amount offered by him or his father, "and weighs strongly in favor of a finding [Nikols] would be a flight risk."[19]

The defense has urged the court to employ some sort of electronic surveillance in lieu of detention. "Although electronic surveillance is available, when considering all of the factors at issue in the present case, there is insufficient evidence to assure [Nikols's] appearance at trial."[20] Electronic surveillance would not assure Mr. Nikols's appearance, nor would orders requiring him to stay away from airports or bus stations. Such conditions would only show *when* Mr. Nikols had fled and would do nothing to effectively prohibit him from leaving the court's jurisdiction if he decided to do so. In addition, requiring his father to post certain properties could potentially lead to his father exchanging his property for his son's freedom. The court finds that these proposed alternatives to detention will not guarantee that Mr. Nikols will appear for trial, especially given the amount of drugs involved, his overseas connections, and the amount of money he can access.

## CONCLUSION

Section 3142(f) requires the court to find "by clear and convincing evidence" that a defendant should be detained. The facts outlined above have convinced the court beyond this required threshold that such is the case — and that Mr. Nikols is a serious flight risk. The

---

[18] *United States v. Abad*, 350 F.3d 793, 799 (8th Cir. 2003).

[19] *Id.*

[20] *Id.*; *see also United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (noting home detention, family assurances, and electronic monitoring were not sufficient in the face of strong evidence that the defendant presented flight risk and danger to the community).

seriousness of the charges — conspiracy to distribute cocaine and possessing a weapon while doing so — as well as the attendant prison time if convicted support these conclusions. The weight of the evidence does, too: the wiretaps and the pleas of his co-conspirators are all strong indicia of guilt. The type of crime with which he is charged — dealing cocaine while possessing firearms — poses a significant danger to the community. Finally, Mr. Nikols's apparently ready access to somewhere between $200,000 and $300,000, together with his family contacts overseas, establish he is a risk of flight. This evidence all favors detention. The only factor that does not favor detention is the defendant's character and history. On balance, the factors heavily favor detention of Mr. Nikols. Therefore, the court finds by clear and convincing evidence that Mr. Nikols is a danger to the community and a flight risk, and ORDERS Mr. Nikols detained pending trial set for December 7, 2005. The court also extends the plea deadline to Mr. Nikols until October 18, 2005.

SO ORDERED.

DATED this 11th day of October, 2005.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge