IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br><br>vs.<br><br><br>MICHAEL NIKOLS,<br><br>Defendant. | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS MIRANDA STATEMENTS<br><br><br><br><br>Case No. 2:04-CR-786 PGC |

This matter is before the court on defendant Michael Nikols's motion to suppress incriminating statements given to law enforcement agents following his arrest. More specifically, Nikols has moved to suppress statements given after a Salt Lake County Deputy District Attorney informed Nikols that if he waived his Miranda rights, a federal indictment would not be sought. Only after Nikols had become aware of a threatened federal indictment and the possible consequences that could flow from that indictment did he agree to waive his *Miranda* rights and make statements. The government has the burden of establishing a voluntary waiver of *Miranda* rights. Because Nikols's waiver was not voluntary, his motion to suppress the statements is granted.

1

**BACKGROUND**

Nikols's motion arises from events surrounding the execution of a myriad of search, seizure, and arrest warrants. On December 11, 2002, Nikols was arrested at his home on suspicion of drug distribution. After his arrest, law enforcement officers took Nikols to the Salt Lake County District Attorney's Investigations Office for questioning. When asked whether he would waive his right to counsel, Nikols remarked that he would like more information regarding what benefits he might receive should he waive his rights. In response, law enforcement officers, as well as a county prosecutor, detailed the differences between state and federal prosecution. In the interrogation room in which Nikols was being held, the investigation involving Nikols was literally mapped out. More specifically, the board illustrated how much prison time Nikols would likely face in the state system versus the federal system. After being advised of his *Miranda* rights, but before waiving those rights, Nikols asked questions about how cooperating with law enforcement might benefit him. When Nikols specifically inquired about his options, a prosecutor entered the room to provide answers to Nikols's questions. During the subsequent discussions, Nikols was told to cooperate or face federal prosecution:

> Q: What did [the prosecutor] say to him?
> A: [The prosecutor] told [Nikols] that he didn't care what he did, but his options were cooperate or there was a possibility of him being indicted federally.
> Q: So [the prosecutor] gave him the option, cooperate, which is to say, talk to you, right?
> A: He said "cooperate."
> Q: And you were there to interview him; am I correct in that?
> A: That's correct.
> Q: All right. And [the prosecutor] said, cooperate or we'll prosecute you federally?
> A: That's correct.

> Q: After that statement was made by [the prosecutor], Nikols then began to talk with you; am I correct?
> A: That's correct.
> Q: In fact, it is exactly on the heels of that that that occurs; is that correct?
> A: That's correct.[1]

According to the prosecutor's own testimony,

> [h]e asked me whether or not I thought he should waive his rights and what I was willing to do for him. I explained to him that I felt we had enough to not only charge him but convict him of the crimes with which he was being charged. Of significant importance were the several firearms found at the Coachman Restaurant in the room we believed to be used by him to cut up and package cocaine for distribution. I explained to him that it was many of the investigators' opinion[s] that the case should go federal . . . [and that] we had made a collective decision long before [the] December 11th and 12th time period that we would afford Mr. Nikols an opportunity to plead in state court, cooperate with the investigation, and not seek a federal indictment against him because of the time differences that he would have to serve in prison.[2]
>
> . . .
>
> As succinctly as I could, I informed him what his general guideline would be for the amount of cocaine that we knew he had distributed, that the effect of the 14 firearms taken from Coachmans Restaurant that morning, the effect of the firearm taken from his home, and what that federal time may be compared to the state time where he would have obviously still a life . . . but the charge to which he was – it was told he would have to plead was seven to life, so a minimum of seven was significantly different than what we had figured the sentencing guideline to be.[3]
>
> . . .
>
> I told him that if he desired not to cooperate, not to take advantage of the opportunity, then he would have to sit there until [United States District Court Magistrate] Judge Alba got in, I would spend the meantime preparing a complaint to bring him into federal court, a complaint would be presented to Judge Alba, if it

---

[1] Transcript of Hearing on Motion to Suppress ("Tr."), p. 52-53.

[2] *Id.* at 69-70.

[3] *Id.* at 70-71.

was signed by Judge Alba, he would be arraigned, and an indictment would be sought the next week.[4]

. . .

I think my exact words were, I don't care one way or the other, if you want, I will go prepare a complaint and we'll go see Judge Alba.[5]

. . .

I told him . . . that if he gave – if he waived Miranda, was forthcoming and truthful with the officers and pled guilty in state court, that he would not be federally indicted.[6]

Almost immediately following the prosecutor's remarks, Nikols agreed to waive his *Miranda* rights and began answering questions. The court finds as facts, then, that Nikols had not determined whether to waive his *Miranda* rights, that he was then told that unless he waived those rights, he would face more serious federal charges, and that because of the threat he agreed to waive his *Miranda* rights.

## DISCUSSION

It is settled law that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[7] The underlying purpose of the *Miranda* rule is to assure that the defendant "is accorded his privilege

---

[4]*Id*. at 71.

[5]*Id*. at 71-72.

[6]*Id*. at 72-73.

[7]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

4

under the Fifth Amendment to the Constitution not to be compelled to incriminate himself."[8]  A suspect who has been informed of his *Miranda* rights "may waive effectuation of [those] rights, provided the waiver is made voluntarily, knowingly, and intelligently."[9]  It is the government's burden to prove a valid waiver by a preponderance of the evidence.[10]

As the Tenth Circuit has held, a waiver of *Miranda* rights is voluntary if the totality of the circumstances demonstrates (1) the waiver was a product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) the waiver was made in full awareness of the nature of the right being waived and the consequences of waiving.[11]  At issue in this case is the first requirement: Was Nikols's waiver voluntarily made?  When a defendant claims that his statement was rendered involuntary, the court's Fifth Amendment inquiry does not end with a conclusion that the defendant's *Miranda* rights were not violated.[12]  The voluntariness of any statement is determined by a totality of the circumstances,[13] including: (1) the characteristics of the defendant (i.e., age, education, intelligence, and physical and emotional attributes); (2) the circumstances surrounding the statement (i.e., length of detention and questioning, and location

---

[8] *Id.* at 439.

[9] *Id.* at 444.

[10] *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986).

[11] *See United States v. Toro-Pelaez*, 107 F.3d 819, 825 (10th Cir. 1997).

[12] *United States v. Roman-Zarate,* 115 F.3d 778, 783 (10th Cir.1997).

[13] *United States v. Glover,* 104 F.3d 1570, 1579 (10th Cir.1997).

of questioning); and (3) the tactics, if any, employed by the officers.[14]  A confession cannot be obtained by use of any sort of threats or violence, nor can it be extracted by any direct or implied promises, nor by the exertion of any improper influence.[15]  Coercive police action is necessary to a finding that a confession is not voluntary within a Fifth Amendment context.[16]

In arguing that Mr. Nikols waived his rights freely and voluntarily, the government cites the Tenth Circuit's decision in *United States v. Roman-Zarate*.[17]  In *Roman-Zarate*, the defendant, on arriving at DEA headquarters, was first advised of his *Miranda* rights.[18]  Zarate then told the DEA agents that he wanted to speak with an attorney.[19]  The agents did not question him further.  After overhearing a conversation among the agents regarding whether he was cooperating, Zarate asked what they meant by "cooperating."[20]  Responding to his question, the agent explained that Zarate could "help himself out" by assisting in the investigation.[21]  Zarate attempted to clarify the agent's explanation, but the agent advised him that any further

---

[14]*United States v. Erekson,* 70 F.3d 1153, 1157 (10th Cir.1995); *United States v. Lux,* 905 F.2d 1379, 1382 (10th Cir.1990); *United States v. Chalan,* 812 F.2d 1302, 1307 (10th Cir.1987), *cert. denied,* 488 U.S. 983 (1988).

[15]*Malloy v. Hogan,* 378 U.S. 1, 7 (1964).

[16] *See U.S. v. Erving L.,* 147 F.3d 1240, 1249 (10th Cir. 1998).

[17]115 F.3d 778 (10th Cir. 1997).

[18]*Id*. at 780.

[19]*Id*.

[20]*Id*.

[21]*Id*.

6

communication was conditioned on his waiver of his *Miranda* right to counsel.[22]  Zarate soon thereafter agreed to waive his rights and began responding to the agents' questions.

In determining whether statements Roman-Zarate gave after waiving his rights were admissible, the Tenth Circuit found it critical that Zarate had "not alleged, and nothing in the record indicate[d], that agents coerced or intimidated him into waiving his rights."[23]  The record in this case is different.  Unlike in *Roman-Zarate*, the defendant in this case was sitting on the fence about whether to waive when he was told that failure to waive would lead to more serious federal charges.  In particular, a prosecutor came in to explain what would happen to Nikols should he choose not to waive his *Miranda* rights.  In explaining potential consequences, the prosecutor testified that he told Nikols that if he did not waive his rights, he would take him to the federal court to "see Judge Alba."  The court concludes that in light of the government's threat to file a federal indictment, which played a crucial role in convincing Nikols to waive his right to counsel, any waiver was not voluntary.

The government asserts that it did nothing more in this instance than explain the precise benefits and consequences that could occur should Nikols not waive his rights and cooperate.  Such explanations, the government argues, are necessary in order to allow the defendant an opportunity to make a knowing and voluntary waiver of his rights.  But the correct method on these facts is the one illustrated in the government's supporting case.  When Roman-Zarate asked for more specific information, the agents "advised [him] that any further communication was

---

[22]*Id*.

[23]*Id*. at 782.

conditioned on Mr. Zarate's waiver of his right to counsel."[24] The problem in this case arose when the government told Nikols if he did not waive, he would face more serious charges. But the government could have told him that they could not discuss the consequences unless he was willing to waive his *Miranda* rights. The approach the government adopted, while well intended and based on a good faith misunderstanding of the law, nonetheless led to a *Miranda* violation.

## CONCLUSION

The government has failed to carry its burden of establishing a knowing, intelligent, and voluntary waiver, and because of that failure, the court GRANTS Nikols's motion to suppress statements he gave following his waiver of his right to counsel.

DATED this 28th day of October, 2005.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge

---

[24] *Id*. at 780.